NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

VERONICA M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.M., *Appellees.*

No. 1 CA-JV 22-0035
FILED 9-13-2022

---

Appeal from the Superior Court in Maricopa County
No. JD510231, JS520073
The Honorable Cassie Bray Woo, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellees*

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge Angela K. Paton joined.

**S W A N N**, Judge:

¶1           Veronica M. ("Mother") appeals the termination of her parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2           The Department of Child Safety ("DCS") took custody of J.M. at birth and petitioned for a dependency judgment because Mother had used methamphetamine for several years, including while pregnant. She was also unemployed and lacked stable housing. The superior court adjudicated J.M. dependent after Mother pled no contest to the allegations.

¶3           Mother successfully participated in services including substance-abuse testing and treatment, psychiatric services, individual and domestic-violence counseling, a parent aide with visitation, and a family-reunification team. Eventually, the court returned J.M. to Mother's custody and dismissed the dependency.

¶4           About a year later, DCS discovered that Mother was neglecting J.M., engaging in domestic violence with J.M.'s father ("Father"), and lacked stable housing. Mother also admitted to relapsing on methamphetamine. DCS petitioned for a dependency and soon afterwards, petitioned to terminate Mother's parental rights based on chronic substance abuse and J.M.'s prior removal. A.R.S. § 8-533(B)(3), (B)(11).

¶5           DCS referred Mother for substance-abuse treatment and testing as well as visitation and agreed to help her with transportation. Mother agreed to self-refer for domestic-violence counseling and parenting classes. She completed an intake for substance-abuse treatment with Terros and informed the clinician she was still using methamphetamine. The clinician diagnosed her with a severe stimulant-use disorder and recommended she participate in intensive outpatient services. Mother did not participate, however, and the referral closed after several outreach attempts by the provider failed. Afterwards, Mother appeared in the case only intermittently; she did not participate in substance-abuse testing and

only attended two visits with J.M. During the times Mother disappeared, DCS tried to locate her to no avail.

¶6        Nonetheless, Mother appeared at the contested termination hearing and testified she had been sober for three weeks and had attended a detoxification program for about four days. After the hearing, the superior court terminated Mother's parental rights on the grounds alleged. Mother appeals.

## DISCUSSION

¶7        Mother argues insufficient evidence supports the court's finding that DCS made reasonable efforts to provide her with appropriate reunification services.[1] A parent's right to custody and control of her own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). Severance of a parental relationship may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005) (citation omitted). The court must also find that severance is in the child's best interest by a preponderance of the evidence. *Id.* at 288, ¶ 41.

¶8        This court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court does not reweigh the evidence, but "look[s] only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶9        Before seeking to terminate parental rights for chronic substance abuse, DCS must make reasonable efforts to provide a parent with appropriate reunification services. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). DCS does so by allowing the parent the "time and opportunity to participate in programs designed to improve [her] ability to care for the child." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94, ¶ 20 (App. 2009). DCS must "undertake measures

---

[1]        DCS argues it was not required to provide Mother with reunification services in the current dependency under the prior-removal ground. *See* A.R.S. § 8-533(B)(11). Because we affirm based on the chronic-substance-abuse ground, we need not resolve that issue.

[that have] a reasonable prospect of success" in reuniting the family. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). Additionally, DCS must "maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 22, ¶ 50 (App. 2019).

**¶10** Nonetheless, DCS is not required "to undertake rehabilitative measures that are futile," *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34, nor is it required to duplicate a service the parent receives elsewhere, *see Pima Cnty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989).

**¶11** Mother asserts that DCS had a duty to help her secure reliable phone service, transportation, employment, and housing.[2] The record shows, however, that Mother disappeared for several weeks at a time and failed to utilize any form of regular communication with DCS, service providers, or, at times, even her attorney. Furthermore, Mother's own admissions undermine her claim that phone service was her main barrier to participating in services.

**¶12** Mother kept almost no contact with DCS for the first three months of the dependency, preventing the case manager from fully assisting her with each of her needs. She did not indicate any issues with her ability to communicate until after the court had set a case plan of severance and adoption. Then, at a hearing, counsel reported Mother "has had some difficulty with her phone," with reading the screen or dialing out, but clarified that she "can use it to . . . receive calls." Counsel also reported that despite Mother's phone difficulties, she was able to attempt contact with her service providers. Mother later confirmed she "kept trying to call [her] case manager," and "left several messages for her to contact me or email me." Additionally, she testified she was able to use a relative's phone to call out, though not for extended periods of time.

---

[2] DCS claims that Mother waived her argument regarding telephone service, employment, and housing by not raising the issues with the superior court. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 16 (App. 2014) (a parent who does not raise the issue of services in the superior court is precluded from challenging that finding on appeal). In our discretion, we decline to apply waiver here. *See Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 536, ¶ 9 (App. 2018) ("[T]he decision to find waiver is discretionary.").

¶13 Nonetheless, Mother maintained that she did not attend Terros because her phone was unreliable. But she did not inform Terros of any difficulties until her referral was on the verge of closure. When she finally notified the clinician, she also stated that "she now has a working phone and is willing to re-engage in[ ] treatment"—a fact she also testified to at trial. The provider told Mother she could attend future sessions in person, but she elected to attend virtually.

¶14 Even with a new phone and the option to use a relative's phone, Mother failed regularly to contact DCS or her providers, and she did not participate in any services or visit J.M. Instead, Mother disappeared, causing DCS to seek her out through its parent-locate service. The results of that service indicated she was living at the same address throughout the dependency, which was the address where Terros and DCS sought to reengage her. Additionally, Mother expressed no issues with other forms of communication, though she failed regularly to use them. The record therefore supports the superior court's finding that the main barrier to Mother's participation in services was her "fail[ure] to respond to DCS efforts by both phone and email for a significant period of the case."

¶15 Mother also argues that DCS failed to assist her with securing an in-patient substance-abuse treatment program. The record shows, however, that Mother's disappearance hindered DCS's ability to help her, and regardless, that she obtained a treatment program.

¶16 Mother asked DCS to refer her for an in-patient program after her initial referral to Terros closed. The court then ordered DCS to "work with Mother to find a substance abuse treatment [program] that she is able to participate in, even if that's an in-patient facility." Two days later, however, Mother chose to continue with Terros rather than an in-patient facility. *See S-2397*, 161 Ariz. at 577 (DCS is not required to duplicate a service a parent is already receiving).

¶17 She then failed to participate in that program a second time, and the referral closed. Thereafter, Mother did not respond to DCS's communications until a week before the trial. At that time, DCS attempted to assist her with securing another treatment program, and she completed a detoxification program the day before trial. On this record, we find no error.

¶18 Mother next argues insufficient evidence supports the superior court's finding that severance was in J.M.'s best interests.

¶19 In addition to finding a statutory ground for termination, the superior court must also determine what is in the best interests of the child by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

¶20 The court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable, *id.*, at 150–51, ¶¶ 13–14, or if the child "would benefit psychologically from the stability an adoption would provide." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Conversely, the court may find a child would be harmed by the continuation of the parent-child relationship "where there is clear and convincing evidence of parental unfitness which has not been remedied notwithstanding the provision of services by [DCS] and which detrimentally affects the child's well-being." *Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989).

¶21 Mother takes issue with the superior court's findings that severance would "allow [J.M.] to have a safe and stable home that is free from substance abuse" and that continuing the parent-child relationship between Mother and J.M. would cause the child to "linger in DCS [custody] . . . without a permanent home." According to Mother, these findings are erroneous because the court did not terminate Father's parental rights in the same hearing and therefore J.M. could not be adopted.

¶22 The fact that J.M. was not immediately available for adoption the day of the termination hearing, however, does not undermine the court's finding that she is an adoptable child and that a future adoption was likely. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370–71, ¶ 22 (App. 2018) (findings regarding a child's adoptability "must reflect a finding that adoption is not only possible, but likely"). The court had not terminated Father's parental rights, but it had found J.M. dependent as to him and set a case plan of severance and adoption. Furthermore, DCS had moved to

sever his rights.  Moreover, the case manager testified J.M. was adoptable and lived with an adoptive family who had a significant relationship with her and was meeting her needs.  Reasonable evidence therefore supports the court's finding that severance was in J.M.'s best interests.

**CONCLUSION**

¶23       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA